UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| JEFFREY M. BAUER, derivatively on behalf of GENVEC, INC. and individually on behalf of himself and all other similarly situated shareholders of GENVEC, INC., | ) ) ) ) ) ) ) | |
| | | Civil Action No. |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| DOUGLAS J. SWIRSKY, 225 Parkview Avenue, Gaithersburg,  Montgomery County, Maryland 20878, | ) ) ) ) | **VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT** |
| CYNTHIA COLLINS, 401 Rockefeller, Apt. 704, Irvine, California 92612, | ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| PAUL H. FISCHER, 5845 Castle Haven Road, Cambridge,  Dorchester County, Maryland 21613, | ) ) ) ) ) | |
| MARC R. SCHNEEBAUM, 4601B Coastal Highway 704, Ocean City,  Worcester County, Maryland 21842, | ) ) ) ) ) | |
| WAYNE T. HOCKMEYER, 2928  Ocean Gateway, Trappe,  Talbot County, Maryland 21673, | ) ) ) ) ) | |
| WILLIAM N. KELLEY, 10750 Savannah Drive, Vero Beach, Florida 32963, | ) ) ) ) | |

ZOLA P. HOROVITZ,                                    )
6468 Enclave Way,                                    )
Boca Raton, Florida 33496,                           )
                                                     )
STEFAN D. LOREN,                                     )
3226 Avenida De Sueno,                               )
Carlsbad, California 92009,                          )
                                                     )
EDWARD M. CONNOR, JR.,                               )
7723 Majestic Way,                                   )
Derwood,  Montgomery County,                         )
Maryland 20855,                                      )
                                                     )
ADEL A.F. MAHMOUD,                                   )
60 Brooks Bend,                                      )
Princeton, NJ 08540,                                 )
                                                     )
KEVIN M. ROONEY,                                     )
8621 Kings Arms Way,                                 )
Raleigh, North Carolina 27615,                       )
                                                     )
DOUGLAS E. BROUGH,                                   )
9121 Tulip Grove Road,                               )
Gaithersburg,  Montgomery County,                    )
Maryland 20879,                                      )
                                                     )
BRYAN T. BUTMAN                                      )
9217 Charterhouse Road,                              )
Frederick,  Frederick County,                        )
Maryland 21704,                                      )
                                                     )
                    Defendants,                      )
                                                     )
        -and-                                        )
                                                     )
GENVEC, INC., a Delaware Corporation,                )
910 Clopper Road, Suite 220N,                        )
Gaithersburg,  Montgomery County,                    )
Maryland 20878,                                      )
                                                     )
                    Nominal Defendant.               )
                                                     )
                                                     )

2

## NATURE AND SUMMARY OF THE ACTION

Plaintiff Jeffrey M. Bauer ("Plaintiff") alleges, upon information and belief based upon, inter alia, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1.      Plaintiff asserts this action for breach of fiduciary duties derivatively on behalf of GenVec, Inc. ("GenVec" or the "Company") against certain current and former members of the Company's Board of Directors (the "Board") for exceeding their authority under the Company's shareholder-approved 2011 Omnibus Incentive Plan, as amended on July 11, 2012 (the "Plan"). Plaintiff also asserts on behalf of himself and the public stockholders of GenVec entitled to vote at the Company's 2013 annual meeting (the "2013 Annual Meeting"), a direct claim against members of the Company's current Board for breaching their fiduciary duties in connection with a false and misleading proxy statement filed by the Board.

2.      The Plan provides for the granting of equity awards to the Company's officers, employees, and directors.  The plain terms of the Plan (a) limits the amount of stock option ("Option") awards that can be granted to any individual participant within any one calendar year to no more than 25,000 shares (the "25,000 Option Limit"), and (b) limits the amount of restricted stock awards that can be granted to any individual participant within any one calendar year to no more than 12,500 shares (the "12,500 Restricted Stock Limit," and collectively with the 25,000 Option Limit, the "Annual Limits").

3.      In 2012 and again in 2013, the Board, acting through its Compensation Committee ("Compensation Committee"), exceeded both the 25,000 Option Limit and the 12,500 Restricted Stock Limit.  In particular, during 2012, the Compensation Committee granted a total of 245,000 options in excess of the 25,000 Option Limit to various officers of the Company.  In 2013, the Compensation

Committee granted a total of 630,000 options in excess of the 25,000 Option Limit to various officers of the Company, and a total of 612,500 shares of restricted stock in excess of the 12,500 Restricted Stock Limit to themselves and other directors and officers.

4.      By approving, permitting, and/or accepting stock awards in violation of the terms of the Plan, each of the Defendants (defined individually below) has breached the fiduciary duties they owed and owe to the Company and its stockholders.  The excess stock awards granted in violation of the Plan are *ultra vires* and should be rescinded.

5.      As a result of repeatedly blowing past the Annual Limits, the Board has quickly depleted the total number of shares available for issuance under the Plan. Accordingly, despite having initially reserved 867,196 shares of GenVec common stock for issuance under the Plan in June 2011, the Board has already twice asked shareholders to approve increases in the total number of shares available for awards.  First, in July 2012, just months after blowing past the Annual Limits, the Board sought and received shareholder approval of a 640,000 share increase in the total number of shares available for issuance under the Plan.  And now at the Company's upcoming 2013 Annual Meeting of Stockholders (the "2013 Annual Meeting"), just months after having violated the Plan again, the Board is once again seeking shareholder approval of a 500,000 share increase in the total share reserve.

6.      Moreover, the Schedule 14A Proxy Statement filed by the Company with the United States Securities and Exchange Commission ("SEC") on October 16, 2013 in connection with the 2013 Annual Meeting, which occurred on November 22, 2013, was false and misleading. In particular, the 2013 Proxy failed to disclose that the Board has repeatedly granted more shares than allowed under the Plan and instead affirmatively and falsely represented that the Board has acted in compliance with the Annual Limits.  Indeed, in an effort to conceal its past violations, the Board has attached a fabricated

4

version of the Plan in the 2013 Proxy, which indicated higher Annual Limits than what was actually approved by the Company's shareholders in 2011.

7.    As a result of the above misconduct, the Company and its shareholders have been, and will be, harmed.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of Wisconsin and no defendant is a citizen of Wisconsin.

9.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.    Venue is proper in this district because nominal defendant GenVec maintains its principal executive offices in this district.

## THE PARTIES

11.    Plaintiff is a shareholder of GenVec and has been a shareholder of GenVec continuously since March 2010.  Plaintiff is a citizen of the state of Wisconsin.

12.    Nominal Derivative Defendant GenVec is a Delaware corporation with its principal place of business at 910 Clopper Road, Suite 220N, Gaithersburg, Maryland 20878.

13.    Defendant Douglas J. Swirsky ("Swirsky") has served as the Company's President and Chief Executive Officer and as a director since September 3, 2013. Swirsky previously served as the Company's Chief Financial Officer, Corporate Secretary, and Treasurer at various times since 2006. Swirsky is a citizen of Maryland.

14.     Defendant Cynthia Collins ("Collins") served as the Company's President and Chief Executive Officer and as a director from May 23, 2012 until September 3, 2013.  Collins is a citizen of California.

15.     Defendant Paul H. Fischer ("Fischer") served as President and Chief Executive Officer and as a director from 1996 until May 22, 2012.  Fischer is a citizen of the Maryland.

16.     Defendant Marc R. Schneebaum ("Schneebaum") has been a director of the Company since 2007. Schneebaum served as a member of the Compensation Committee when each of the awards challenged in this litigation were granted.  Schneebaum is a citizen of Maryland.

17.     Defendant Wayne T. Hockmeyer ("Hockmeyer") has been a director of the Company since 2000. Hockmeyer served as a member of the Compensation Committee when each of the awards challenged in this litigation were granted.  Hockmeyer is a citizen of Florida.

18.     Defendant William N. Kelley ("Kelley") has been a director of the Company since 2002. Kelley served as a member of the Compensation Committee when each of the Awards challenged in this litigation were granted.  Kelley is a citizen of Florida.

19.     Defendant Zola P. Horovitz ("Horovitz") has been a director of the Company since 2003. Horovitz is a citizen of Florida.

20.     Defendant Stefan D. Loren ("Loren") has been a director of the Company since September 19, 2013.  Loren is a citizen of California.

21.     Defendant Edward M. Connor, Jr., ("Connor") served as a director of the Company from June 15, 2011 until September 3, 2013.  Connor served as a member of the Compensation Committee when the 2012 and January 2013 grants challenged in this litigation were granted.  Connor is a citizen of Maryland.

22.     Defendant Adel A.F. Mahmoud ("Mahmoud") served as a member of the Board from June 2011 until September 3, 2013.  Mahmoud is a citizen of New Jersey.

23.     Defendant Kevin M. Rooney ("Rooney") served as a member of the Board from January 2008 until September 3, 2013.  Rooney is a citizen of North Carolina.

24.     Defendant Douglas E. Brough ("Brough") joined the Company in 1993 and is currently the Company's Chief Scientific Officer.  Brough is a citizen of Maryland.

25.     Defendant Bryan T. Butman ("Butman") joined the Company in 1999 and is currently the Company's Senior Vice President, Development.  Butman is a citizen of Maryland.

26.     Defendants Schneebaum, Rooney, Fischer, Hockmeyer, Kelley, Horovitz, Connor, Mahmoud, Collins, and Swirsky all served on the Board during the time that at least some of the awards challenged herein were granted and are collectively referred to as the "Director Defendants." Defendants Schneebaum, Kelley, Hockmeyer, Horovitz, Swirsky, Brough, Butman, and Collins all received some of the awards challenged herein and are collectively referred to as the "Recipient Defendants."  Defendants Schneebaum, Hockmeyer, Kelley, Horovitz, Swirsky, and Loren all serve on the Board that disseminated the false and misleading 2013 Proxy and are collectively referred to as the "Current Board."

## FURTHER SUBSTANTIVE ALLEGATIONS

27.     The Board adopted the Plan on April 21, 2011, and the Company's stockholders approved the Plan at the Company's 2011 annual meeting of stockholders, which was held on June 15, 2011 (the "2011 Annual Meeting").  Following approval of the Plan at the 2011 Annual Meeting, the Company filed the Plan with the SEC on June 17, 2011 as Exhibit 10.1 to a Form 8-K.  This version of the Plan is attached hereto as Exhibit A.

7

28.     The Plan provides for the granting of various equity awards, including options and restricted stock, to the Company's officers, employees, and directors.

29.     The Plan is administered by the Compensation Committee, but pursuant to the terms of the Plan, the full Board can "exercise any or all of the powers and authority related to the administration and implementation of the Plan."

30.     Section 6.2 of the Plan provides limits on the number of shares subject to awards that can be granted to an individual participant during a calendar year.

31.     Section 6.2(a) of the Plan limits the amount of shares covered by options and stock appreciation right awards ("SARs") that can be granted in a calendar year to a participant to 25,000 shares. As stated in Section 6.2(a) of the Plan, "the maximum number of shares of Stock subject to Options or SARs that may be granted under the Plan in a calendar year to any person eligible for an Award under Section 6 is 25,000 shares . . . ."

32.     Section 6.2(b) of the Plan limits the amount of shares covered by awards other than Options and SARs, including restricted stock, that can be granted in a calendar year to a participant to 12,500 shares. As stated in Section 6.2(b) of the Plan, "the maximum number of shares of Stock that may be granted under the Plan, other than pursuant to Options or SARs, in a calendar year to any person eligible for an Award under Section 6 is 12,500 shares . . . ."

33.     The Board specifically noted the Annual Limits when it first sought stockholder approval of the Plan in 2011. As stated in the Schedule 14A Proxy Statement filed by the Board with the SEC on April 29, 2011 (the "2011 Proxy", which is attached hereto as Exhibit B):

> The maximum number of shares of Common Stock subject to options or stock appreciation rights that can be granted under the 2011 Omnibus Incentive Plan in a calendar year to any person is 25,000. The maximum number of shares of Common Stock

that can be granted under the 2011 Omnibus Incentive Plan to any person, other than pursuant to an option or stock appreciation right, is 12,500 per year.

34.     At the time of its approval, 867,196 shares of GenVec common stock were reserved for issuance under the Plan: 300,000 new shares and 567,196 shares that were transferred from the Company's prior plan.

35.     Less than seven months after approval of the Plan, the Board, acting through its Compensation Committee, made several grants in excess of the Annual Limits.  Specifically, on January 18, 2012 the Compensation Committee, which at the time consisted of Defendants Scheenbaum, Hockmeyer, Kelley, and Connor, granted officers Fischer, Swirsky, Brough, and Butman option awards of 150,000, 60,000, 75,000, and 60,000 shares, respectively, under the Plan.[1]

36.     Accordingly, during the 2012 calendar year, each of Fischer, Swirsky, Brough, and Butman were granted options in excess of the 25,000 Option Limit.

37.     Having improperly blown past the Annual Limits, by May 22, 2012, there were just 531,750 shares available for future grants under the Plan.  Accordingly, despite having adopted the Plan one year earlier, the Board went back to shareholders to seek an increase in the total shares available for awards.

38.     Specifically, the Board adopted an amendment to the Plan to increase the total number of shares available for issuance under the Plan by 640,000 shares, from 531,750 to 1,171,750 (the "2012 Amendment").  In the Schedule 14A Proxy Statement filed by the Board with the SEC on May 31, 2013 (the "2012 Proxy", which is attached hereto as Exhibit C), the Board sought and received stockholder

---

[1] Fischer's award was forfeited when he left the Company in May 2012 and accordingly rescission of his 150,000 stock option award is not necessary.

approval of the 2012 Amendment at the Company's 2012 Annual Meeting of Stockholders, which was held on July 11, 2012.

39.     Notably, in the 2012 Proxy, the Board specifically noted the Annual Limits:

> The maximum number of shares of Common Stock subject to options or stock appreciation rights that can be granted under the 2011 Plan in a calendar year to any person is 25,000. The maximum number of shares of Common Stock that can be granted under the 2011 Plan to any person, other than pursuant to an option or stock appreciation right, is 12,500 per year.

40.     Following approval of the 2012 Amendment, the Company filed the 2012 Amendment with the SEC on July 17, 2012, as Exhibit 10.1 to a Form 8-K (attached hereto as Exhibit D).

41.     Just months later, the Compensation Committee again made numerous grants in violation of the Plan.  On January 22, 2013, the Compensation Committee, which at the time consisted of Defendants Scheenbaum, Hockmeyer, Kelley, and Connor, granted officers Swirsky, Brough, and Butman option awards of 125,000, 85,000, and 75,000 shares, respectively, under the Plan.  On January 23, 2013, the Compensation Committee granted Collins an option award covering 200,000 shares under the Plan.

42.     The violations continued.  On September 3, 2013, the Compensation Committee, which consisted of Defendants Scheenbaum, Hockmeyer, and Kelley, granted each of themselves and non-employee director Horovitz 75,000 shares of restricted stock, under the Plan.  Also on September 3, 2013, the Compensation Committee granted officers Swirsky, Brough, and Butman 200,000, 125,000, and 75,000 shares of restricted stock, respectively, under the Plan.

43.     Accordingly, during the 2013 calendar year, each of Collins, Swirsky, Brough, and Butman were granted options in excess of the 25,000 Option Limit, and each of Scheenbaum,

10

Hockmeyer, Kelley, Horovitz, Swirsky, Brough, and Butman were granted restricted shares in excess of the 12,500 Restricted Stock Limit.

44.     Having soared past the Annual Limits again, by October 15, 2013, there were only 559,914 shares available for future grants under the Plan.  Accordingly, for the third consecutive year, the Board went back to the Company's shareholders to seek an increase in the total number of shares available for awards.

45.     Specifically, on October 16, 2013, the Board filed the 2013 Proxy in connection with the 2013 Annual Meeting, scheduled for November 22, 2013.  The 2013 Proxy is attached hereto as Exhibit E.  In the 2013 Proxy via Proposal No. 2 the Board solicited shareholder approval for an amendment to the Plan to increase the total number of shares authorized for issuance under the Plan by 500,000 shares from 559,914 to 1,059,914 (the "2013 Amendment").  The Board also sought the re-election of defendants Kelley and Horovitz for a three-year term.

46.     The 2013 Proxy was materially false and misleading.

47.     First, the 2013 Proxy failed to disclose that the Compensation Committee has granted themselves and numerous officers and directors stock awards in excess of the 25,000 Option Limit and the 12,500 Restricted Stock Limit during the past two years.  There is no mention of the 2013 grants at all.  And with respect to the 2012 grants, the 2013 Proxy affirmatively stated that the awards granted in January 2012 were "made under the Company's 2011 Omnibus Incentive Plan" leading shareholders to believe that the Board acted in compliance with the Plan.

48.     Second, the Board actively attempted to hide their past misconduct in the 2013 Proxy.  In the 2013 Proxy in Proposal No. 2, the Board provided a "summary of the material terms" of the Plan.  In it, the Board falsely represented that the annual per-person limit for options is 250,000 shares (not

25,000 shares) and that the annual limit for all other awards is 120,500 shares (and not 12,500 shares). As stated in the 2013 Proxy:

> The maximum number of shares of Common Stock subject to options or stock appreciation rights that can be granted under the 2011 Plan in a calendar year to any person is 250,000. The maximum number of shares of Common Stock that can be granted under the 2011 Plan to any person, other than pursuant to an option or stock appreciation right, is 120,500 per year.

49.     Further, as Annex A to the 2013 Proxy, the Board attached what it claims to be the version of the Plan that was adopted by the Board on April 21, 2011 and approved by the Company's shareholders on June 15, 2011.  This attached version of the Plan was specifically identified as the 2011 version, as it concludes with "To record adoption of the Plan by the Board as of April 21, 2011, and approval of the Plan by the shareholders on June 15, 2011, the Company has caused its authorized officer to execute the Plan."    In this attached purported version of the 2011 Plan, Section 6.2(a) states that the per-participant limit for options is 250,000 and the per-participant annual limit for all other awards is 120,500.  Specifically, this attached version states in pertinent part:

> (a) the maximum number of shares of Stock subject to Options or SARs that may be granted under the Plan in a calendar year to any person eligible for an Award under Section 6 is 250,000 shares;
>
> (b) the maximum number of shares of Stock that may be granted under the Plan, other than pursuant to Options or SARs, in a calendar year to any person eligible for an Award under Section 6 is 120,500 shares; and

50.     This is an outright lie, and is simply not the version of the Plan that was adopted by the Board on April 21, 2011, and approved by the Company's shareholders on June 15, 2011.  As described above, in 2011, the Board sought and received shareholder approval of the Plan from the Company's shareholders.  Both the 2011 Proxy and the Plan attached to it described the per-participant annual limit as being 25,000 for Options and SARs and 12,500 for all other awards.  After the Board received

shareholder approval of the Plan at the 2011 annual meeting, it filed the Plan with the SEC on July 17, 2011 as an exhibit to a Form 8-K.   In the filed version, Section 6.2 stated that the per-participant annual limit as being 25,000 for options and 12,500 for all other awards.  A year later in the 2012 Proxy, the Board again specifically noted the per-participant annual limit as being 25,000 for Options and SARs and 12,500 for all other awards.

51.     Accordingly, the version of the Plan attached by the Board to the 2013 Proxy which it represented as being the Plan approved in 2011 (and notably is identical to the actual Plan filed with the SEC in 2011 except for the increases in the per-participant annual limits) is a complete fabrication. These fabrications are not typos as they are carried through into the description of the Plan in the 2013 Proxy.  The Board therefore actively engaged in an effort to conceal its past violations from the Company's shareholders.

52.     As described in the 2013 Proxy, there are only 14 individuals currently eligible to receive awards under the Plan, including all six current Board members.  The 500,000 total share increase sought in the 2013 Amendment represented an amount of shares equal to 3.65% of the Company's outstanding common stock.  In essence, the Board asked shareholders to approve an amendment that would allow them to grant a select few insiders, including themselves, a significant portion of the Company's outstanding common stock.   Certainly in determining whether to approve such an amendment, a shareholder would have found it important to know that the Plan's limits have been exceeded in each of the past two years and that the number of shares available for awards under the Plan only needed to be raised because of the undisclosed *ultra vires* grants.  As described above, however, the 2013 Proxy failed to disclose this vital information and led shareholders to believe that the Board has acted in compliance with the Plan.

53.     Similarly, truthful and complete disclosure regarding the Board's violations of the Plan was material information that a reasonable shareholder would have considered in determining whether to elect directors Kelley and Horovitz for another three-year term.   Indeed, Kelley has served as a member of the Compensation Committee that approved grants to himself and others in excess of the Annual Limits during each of the past two years.   Stockholders had a right to know that Kelley was seeking reelection after violating the Annual Limits on behalf of himself and others, and that Horovitz accepted stock awards in violation of the Plan and did nothing to remedy clear violations of the Plan.

54.     Shareholders also needed an accurate description of *what* they are actually approving in Proposal No. 2.   As described in the 2013 Proxy and in Annex B attached to the 2013 Proxy, the Board was seeking shareholder approval of only *one amendment* to the Plan, an amendment to increase the total limit available for issuance under the Plan by 500,000 shares.   But the 2013 Proxy also noted that approval of Proposal No. 2 will also constitute approval of certain of the Plan's material terms, including Section 6.2's annual limits, which the 2013 Proxy describes as being 250,000 for options and 120,500 for all other awards.   Of course, as detailed above, these are not actually the Plan's annual limits.   The 2013 Proxy should have been clarified so that shareholders knew what was actually being approved with respect to Section 6.2's annual limits.

55.     Thus, the 2013 Proxy was materially misleading and prevented shareholders from casting an informed vote regarding the important decisions facing them at the 2013 Annual Meeting.   Without knowledge of these materially false and misleading statements and omissions, the Company's stockholders relied upon the disclosures in the Company's 2013 Proxy and approved the Plan amendment and the reelection of Defendants Kelley and Horovitz at the 2013 Annual Meeting.

### *The Director Defendants Knowingly and Intentionally Violated the Plan*

56.     Each of the Defendants was aware of the terms of the Plan.  The following facts lead to the conclusion that the Defendants were aware of the existence of the Annual Limits:

(i)     As members of the Compensation Committee, Defendants Scheenbaum, Hockmeyer, Kelley, and Connor were responsible for administering the Plan and thus certainly knew its terms.

(ii)    It is certainly reasonable to infer that Defendants Schneebaum, Rooney, Fischer, Hockmeyer, Kelley, and Horovitz knew of the existence of the Limits as they (a) were on the Board that adopted the Plan in 2011 and recommended that the Company's stockholders approve it, and (b) were on the Board that filed the 2011 Proxy, which clearly described the 25,000 Option Limit and 12,500 Restricted Stock Limit.

(iii)   It is certainly reasonable to infer that Defendants Schneebaum, Rooney, Collins, Hockmeyer, Kelley, Horovitz, Connor, and Mahmoud knew the terms of the Plan as they were on the Board that adopted an amendment to the Plan in 2012 and recommended that the Company's stockholders approve it, and (b) were on the Board that filed the 2012 Proxy, which clearly described the 25,000 Option Limit and 12,500 Restricted Stock Limit.

(iv)    Finally, each of the Defendants were eligible to receive, and did receive, awards under the Plan, and it is thus certainly reasonable to infer that the Defendants would know the terms of the Plan pursuant to which their awards were granted.

57.     Given this, the only conclusion is that each of the Director Defendants knowingly and intentionally violated the shareholder-approved Plan. Moreover, as described above the Current Board's active efforts to conceal their misconduct further evidence that the Current Board members were aware that they had violated the Plan.

### *The Company Has Been and Will Be Harmed As a Result of the Unauthorized Awards*

58.     As described herein, by granting awards to Fischer, Collins, Scheenbaum, Hockmeyer, Kelley, Horovitz, Swirsky, Brough, and Butman in violation of the Annual Limits, the Board improperly transferred options and shares of restricted stock to the Recipient Defendants in violation of the terms of the Plan.

59.     In addition, as a Delaware corporation and a NASDAQ-listed company, GenVec is subject to corporate governance rules and regulations respecting internal controls over the issuance of stock-based compensation.  Failure to comply with such rules and regulations subjects GenVec to a risk of various forms of economic and non-economic harms, including regulatory penalties and NASDAQ de-listing.

60.     The repeated violations of the Plan described above *ipso facto* demonstrate material weaknesses in the Company's internal controls.  Those weaknesses must be remedied in order to ensure that GenVec complies with applicable laws, rules and regulations and that the Company and its shareholders are not further harmed by the wrongdoing described herein.

## DEMAND FUTILITY ALLEGATIONS

61.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

62.     Plaintiff brings this action derivatively on behalf of GenVec to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

63.     Plaintiff has owned GenVec stock continuously during the time of the wrongful course of conduct alleged herein and continues to hold GenVec stock.

64.     Plaintiff will adequately and fairly represent the interests of GenVec in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

65.     At the time of this filing the Current Board consists of the following six directors: Schneebaum, Hockmeyer, Kelley, Horovitz, Swirsky, and Loren.  Each member of the Current Board has been named as a Defendant in this action.

66.     Plaintiff did not make a demand on the Current Board prior to instituting this Action.  A pre-suit demand upon the Current Board is futile for several reasons.

67.     Schneebaum, Hockmeyer, Kelley, Horovitz, and Swirsky each received compensation that is being challenged in this lawsuit.  Accordingly, they have a strong financial incentive not to authorize any corrective action that would force them to disgorge improperly obtained awards. Thus, Schneebaum, Hockmeyer, Kelley, Horovitz, and Swirsky -- whom together constitute a majority of the Board -- are interested and demand is excused.

68.     Moreover, Defendants Schneebaum, Hockmeyer, and Kelley knowingly and intentionally approved stock awards to themselves and other Company insiders in violation of the terms of the Plan. The granting of an award in violation of the express, unambiguous terms of the Plan could not have been a good faith exercise of business judgment.  Similarly, as a result of these actions, Defendants Schneebaum, Hockmeyer, and Kelley face a substantial likelihood of liability.  Accordingly, demand as to Schneebaum, Hockmeyer, and Kelley is excused.

69.     Moreover, in the 2013 Proxy, the Current Board attempted to conceal its misconduct, as described above.  These actions by the Current Board evidence bad faith conduct and accordingly demand is excused.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

71.     Plaintiff brings this action as a class action on behalf of owners of GenVec common stock as of October 11, 2013, the record date for the determination of shareholders entitled to vote at the 2013 Annual Meeting (the "Class").  Excluded from the Class are Defendants and their affiliates,

immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

72.      The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  According to the 2013 Proxy, as of October 11, 2013, over 13.67 million shares of common stock were represented by the Company as outstanding.  All members of the Class may be identified from records maintained by GenVec or its transfer agent and may be notified of the pendency of this action by U.S. mail, using forms of notice similar to that customarily used in securities class actions.

73.      Questions of law and fact are common to the Class, which predominate over questions affecting any individual class member.  The common questions include, *inter alia*, whether the Board members breached their fiduciary duties by filing the false and misleading 2013 Proxy.

74.      Plaintiff's claims are typical of the claims of the other members of the class and Plaintiff has the same interests as the other members of the Class.

75.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Accordingly, Plaintiff is an adequate representative of the class and will fairly and adequately protect the interests of the Class.

76.      A class action is a superior method for adjudication because the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

77.     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

78.     A class action is a superior method for adjudication because the cost of prosecuting individual actions is prohibitive and the expense of adjudicating repetitious individual claims in different courts would be an inefficient use of judicial resources.

79.     Concentrating the litigation of claims in this forum is desirable because the Company is a Delaware corporation and the litigation involves issues of Delaware law.

80.     Defendants have acted on grounds generally applicable to the class, making a class-wide adjudication a superior method of resolving the claims and making final injunctive relief appropriate with respect to the Class as a whole.

81.     There are no issues requiring individualized resolution or the creation of sub-classes, thus class-wide adjudication will not present manageability concerns.

### COUNT I
### Breach of Fiduciary Duty
### (Derivatively Against Defendants)

82.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.     As officers and/or directors of the Company, each of the Defendants owed the Company and its stockholders fiduciary duties.

84.     As demonstrated by the allegations above, in authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Plan, the Director

Defendants exceeded their authority under the Plan, and breached their fiduciary duties under Delaware law.

85.     These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of the Recipient Defendants at the expense and to the detriment of the Company.

86.     The Recipient Defendants breached their fiduciary duties to the Company by accepting grants in violation of the Plan for their own personal benefit to the detriment and expense of the Company.  Accordingly, the Recipient Defendants breached their fiduciary duties to the Company and its stockholders.

87.     As a result of the Defendants' actions, the Company has been and will be damaged.

88.     Plaintiff and the Company have no adequate remedy at law.

### COUNT II
### Unjust Enrichment
### (Derivatively Against the Recipient Defendants)

89.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

90.     The Recipient Defendants received unauthorized personal financial benefits as a result of the awards challenged herein.

91.     It would be unconscionable and against fundamental principles of justice, equity, and good conscience for the Recipient Defendants to retain the benefits of the awards that were granted in plain violation of the Stock Plan.

92.     The Recipient Defendants have been unjustly enriched at the expense and to the detriment of the Company.

93.     Accordingly, this Court should order the Recipient Defendants to disgorge the grants awarded in excess of the applicable fiscal year limits in the Plan.

94.     Plaintiff has no adequate remedy at law.

### COUNT III
**Breach of Fiduciary Duty of Candor In Connection With the 2013 Proxy**
**(Direct Claim Against the Current Board)**

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     The fiduciary duties of the Current Board required them to be completely truthful with the Company's shareholders and disclose all information material to the decisions confronting GenVec stockholders at the 2013 Annual Meeting.

97.     As set forth above, the members of the Current Board have breached their fiduciary duty by filing and seeking shareholder action on the basis of the materially false and misleading 2013 Proxy.

98.     As a result, Plaintiff and Class members have been harmed irreparably.

99.     Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     A declaration that the awards granted to the Recipient Defendants in 2012 and 2013 that are in excess of the Annual Limits are *ultra vires* and not authorized by the Plan;

B.     Rescission of the excess grants awarded to the Recipient Defendants;

C.     As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D.      Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, and violation of the Plan, plus pre-judgment and post-judgment interest;

E.      Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

F.      Directing GenVec to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with the Plan, applicable laws and policies, and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

G.      Awarding Plaintiff, GenVec (as the nominal defendant), and the class the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

H.      Granting Plaintiff, GenVec (as the nominal defendant), and the class such other and further relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury.


Dated: October 17, 2014                     Respectfully submitted,

                                            LEVI & KORSINSKY, LLP

                                            /s/ Nicholas I. Porritt

                                            Nicholas I. Porritt (Bar No. 17078)
                                            1101 30th Street NW, Suite 115
                                            Washington, DC 20007
                                            Telephone: (202) 524-4290
                                            Facsimile: (202) 333-2121
                                            E-mail: nporritt@zlk.com

Douglas E. Julie (not admitted to practice in Dist. of MD)
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510
E-mail: djulie@zlk.com

*Attorneys for Plaintiff*